1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                     January 2024 Grand Jury

11 | UNITED STATES OF AMERICA,           CR No. 2:24-cr-00299-GW

12 |           Plaintiff,                 I N D I C T M E N T

13 |           v.                         [21 U.S.C. § 846: Conspiracy to
                                          Manufacture and Distribute
14 | HUBEI AOKS BIO-TECH CO. LTD.,        Fentanyl, and to Distribute Listed
      aka "Hubei Aoks Trading            Chemicals for the Manufacture of
15 |   Company,"                          Fentanyl; 21 U.S.C. § 963:
      aka "Aoks Trade Co., Ltd.,"        Conspiracy to Distribute Listed
16 | XUENING GAO,                         Chemicals for Importation to the
    GUANGZHOU GAO,                        United States; 21 U.S.C.
17 | YAJING LI,                           §§ 959(a), 960(d)(7): Distribution
      aka "Alsa Lee," and                of Listed Chemicals for
18 | FNU LNU,                             Importation; 21 U.S.C.
      aka "Jessie Lee,"                   § 841(c)(2): Distribution of
19 |                                      Listed Chemicals for Manufacture
                                          into Controlled Substances; 21
20 |           Defendants.                U.S.C. §§ 331(a), 333(a)(2), 352:
                                          Introduction of Misbranded Drugs
21 |                                      into Interstate Commerce; 21
                                          U.S.C. §§ 853 and 881(a)(6), 18
22 |                                      U.S.C. §§ 981(a)(1)(C) and
                                          982(a)(7) and 28 U.S.C. § 2461(c):
23 |                                      Criminal Forfeiture]

24

25       The Grand Jury charges:

26                   INTRODUCTORY ALLEGATIONS

27       At times relevant to this Indictment:

28

A.    INTRODUCTION

1.    The United States is experiencing an opioid overdose epidemic.  Between 2021 and 2022, at least 160,767 Americans died from opioid-involved overdoses.  Opioid overdose is the leading cause of death for Americans between the ages of 18 and 45.

2.    The introduction of synthetic opioids into the illicit drug market has exacerbated the overdose problem.  Fentanyl is a highly addictive synthetic opioid that is approximately 50 times more potent than heroin.  A two-milligram dose of fentanyl can be deadly.  In 2023, the Drug Enforcement Administration ("DEA") seized over 79.5 million fentanyl-laced counterfeit pills and nearly 12,000 pounds of fentanyl powder.  The 2023 fentanyl seizures are equivalent to more than 376.7 million lethal doses of fentanyl.

3.    Manufacturing fentanyl begins with raw chemicals, known as fentanyl precursors.  One such fentanyl precursor commonly used to manufacture fentanyl is 1-Boc-4-Piperidone ("1-Boc-4P"), which bears the Chemical Abstracts Service ("CAS") registry number 79099-07-3. CAS registry numbers are unique numerical identifiers used to distinguish between chemical substances.  The CAS registry number assigned to a particular chemical substance unambiguously identifies the chemical substance when there may be multiple common names used to identify that substance.  Two other common fentanyl precursors commonly used to manufacture fentanyl are Benzyl 4-oxopiperidine-1-carboxylate ("1-Cbz-4-Piperidone" or "1-Cbz-4P"), which bears CAS registry number 19099-93-5, and Ethyl 4-oxo-1-piperidinecarboxylate ("N-Carbethoxy-4-Piperidone" or "N-Carbethoxy-4P"), which bears CAS registry number 29976-53-2.  All three aforementioned fentanyl precursors are classified as List I chemicals.

2

4.    Fentanyl is often mixed with adulterants.  One common adulterant is xylazine, which is a tranquilizer that is available in liquid and powder form.  Xylazine, as a liquid injectable only, is approved by the United States Food and Drug Administration ("FDA") for veterinary use.  In the veterinary context, xylazine is used as an injectable for sedation, anesthesia, muscle relaxation, and pain relief in horses, cattle, and other animals.  Xylazine is not approved by the FDA for human use and xylazine powder is not approved by the FDA for any use.

5.    Drug traffickers often solicit and mix xylazine, commonly referred to on the street as "tranq," with other opioids like fentanyl.  Drug traffickers use xylazine in this manner to enhance and/or prolong the effects of the opioid, to increase profits by increasing the weight of the substance, and to decrease manufacturing costs because adding xylazine as an adulterant allows drug traffickers to use less of the opioid while still maintaining the same or similar psychoactive effects.  Many opioid users are unaware they are taking xylazine.  Xylazine causes sedation, slowed breathing, low blood pressure, slowed heart rate, among other effects.  Drug users who inject xylazine, or drug mixtures containing xylazine, often develop necrotic tissue resulting in disfiguring wounds or amputation.  Given xylazine's sedative effects, its use in opioid cocktails increases the likelihood of a deadly overdose.  Moreover, naloxone (brand name Narcan), which is a life-saving opioid overdose reversal treatment, does not reverse the effects of xylazine.  Indeed, overdose deaths involving xylazine have steadily increased year after year.  In 2023, 30% of all fentanyl powder and 6% of all fentanyl pills seized by the DEA contained xylazine.

6.    Fentanyl is also often mixed with other adulterants, such as analgesics like acetaminophen, benzocaine, procaine, and lidocaine.  These are pain relieving drugs.  Drug traffickers often mix analgesics with fentanyl and other opioids to enhance the effects of those drugs, to increase profits, and to decrease manufacturing costs.

7.    Fentanyl precursors and adulterants are primarily sourced from chemical manufacturing and distribution companies in China ("chemical companies").  These chemical companies openly advertise their products all over the world, including to the United States and Mexico, on their websites as well as on various other online platforms, including WhatsApp, Instagram, Twitter, LinkedIn, Pinterest, and chemical e-commerce sites.  These chemical companies frequently guarantee that all shipments of precursors and other chemicals will safely arrive at their destination without any issues. These chemical companies utilize various methods to obfuscate their employees' identities and to conceal their criminal activities, including by using false names and profile pictures, encrypted messaging applications, and payments through cryptocurrency wallets. These chemical companies ship fentanyl precursors and adulterants around the world, including to the United States and Mexico, where drug cartels and traffickers use the precursors to synthesize and manufacture fentanyl into powder and pills, mix the fentanyl with various adulterants, and distribute it throughout the United States.

8.    These chemical companies also often attempt to evade law enforcement detection and interception by using false return labels, false documentation in the parcel, falsified customs forms and

1    declarations, and packaging that conceals the true contents of the

2    parcels and the identity of the distributors.

3    B.    FEDERAL FOOD, DRUG AND COSMETIC ACT

4         9.    Congress enacted the Federal Food, Drug and Cosmetic Act,

5    which is set forth in Sections 301 to 397 of Title 21 of the United

6    States Code, to protect the public from, among other things, drugs

7    that are misbranded or not proven to be safe and effective for their

8    intended uses.

9         10.    Sections 331(a) and 333(a)(2) of Title 21, United States

10   Code, prohibit the introduction or causing the introduction into

11   interstate commerce of any drug that is misbranded with the intent to

12   defraud or mislead.

13        11.    Pursuant to Title 21, United States Code, Section

14   352(a)(1), a drug is deemed to be misbranded if its labeling is false

15   or misleading.  Labeling is defined under the Act to include the

16   written, printed, or graphic matter on the container, any wrapping,

17   or accompanying the drug.

18        12.    Pursuant to Title 21, United States Code, Section 352(b), a

19   drug is misbranded if the label does not contain the name and place

20   of business of the manufacturer, packer, or distributor, and an

21   accurate statement of the quantity of the contents in term of weight,

22   measure, or numerical count.

23        13.    Pursuant to Title 21, United States Code, Section

24   352(e)(1), a drug is misbranded if the label does not contain the

25   established name and active ingredients of the drug.

26        14.    Pursuant to Title 21, United States Code, Section 352(f), a

27   drug is deemed to be misbranded unless its labeling bears, among

28   other things, adequate directions for its use and adequate warnings

against its use where such use could be dangerous to the user's health.

15.    Pursuant to Title 21, United State Code, Section 352(o), a drug is also deemed to be misbranded unless it is manufactured, prepared, propagated, compounded, or processed in an establishment that is duly registered with the Secretary of the United States Department of Health and Human Services.

C.    DEFENDANTS XUENING GAO AND GUANGZHOU GAO

16.    For over a decade, defendants XUENING GAO and GUANGZHOU GAO ("G. GAO") have operated with impunity selling controlled substances and precursor chemicals, including fentanyl precursors, to customers throughout the United States and receiving hundreds of thousands of dollars from the sale and distribution of such chemicals, including chemicals that can be synthesized into fentanyl and other dangerous drugs, and are contributing to the opioid crisis in the United States.  Since at least 2011, defendant XUENING GAO operated and/or was affiliated with numerous chemical companies in China that sold and distributed controlled substances and precursor chemicals to customers and drug traffickers in the United States.  In 2015, defendant G. GAO was affiliated with another chemical company that sold fentanyl and acetyl-fentanyl to drug traffickers in the United States.

17.    In 2013, defendant XUENING GAO received wire transfer payments from chemical sales made through two chemical companies operating in China – KaiKai Technologies Co., Inc. and Kerry Industry Co., Ltd. – both of which sold 3,4-Methylenedioxy-N-methycathinone hydrochloride ("methylone" or "MDMC"), a Schedule I controlled

1  substance similar to 3,4-methylenedioxymeth-amphetamine, commonly

2  known as "MDMA" or "ecstasy," to customers in the United States.

3      18.  In 2014, defendant XUENING GAO was also affiliated with

4  Shijiazhuang Sute Trade Co. Ltd., another chemical company operating

5  in China that sold 25-I-NBOMe, a Schedule I controlled substance

6  commonly known as "N-Bomb," to customers in the United States.

7      19.  In 2015, defendant G. GAO received wire transfer payments

8  from chemical sales made through Shanxi Zhongwei Industrial, a

9  chemical company operating in China that sold fentanyl and acetyl-

10  fentanyl to drug traffickers in the United States.

11      20.  In November 2016, defendant XUENING GAO founded defendant

12  HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks

13  Trading Company" and "Aoks Trade Co., Ltd." ("HUBEI AOKS"), which

14  sold precursors and listed chemicals globally, including to the

15  United States.

16  D.  DEFENDANT HUBEI AOKS

17      21.  Defendant HUBEI AOKS was a pharmaceutical company located

18  in Wuhan, Hubei Province, China.  It was founded on November 24,

19  2016, and defendant XUENING GAO was the sole owner.  The company

20  operated the following websites: aoksbio.com, bmkoil.com,

21  bmkpowder.com, 69673-92-3.com, and phenacetinchina.com.  The website

22  domains "bmkoil" and "bmkpowder" refer to Benzyl Methyl Ketone, also

23  known "BMK," which is a methamphetamine precursor.  The website

24  domain "69673-92-3" refers to CAS Registry Number 69673-92-3, which

25  corresponds to 2-Chloro-1-(4-methylphenyl)-1-propanone, a precursor

26  for a drug that is similar to MDMA and methylone.

27      22.  Defendant HUBEI AOKS openly advertised online and sold an

28  array of chemicals, including fentanyl precursors like 1-Boc-4P, 1-

1   Cbz-4P, and N-Carbethoxy-4P, methamphetamine precursors, MDMA

2   precursors, reagents necessary for controlled substance

3   manufacturing, and various adulterants like xylazine, lidocaine,

4   benzocaine, procaine, acetaminophen, and others.  Defendant HUBEI

5   AOKS employed at least 13 sales representatives who were grouped into

6   two sales teams.  Sales team 1 was managed by defendant First Name

7   Unknown Last Name Unknown, aka "Jessie Lee" ("JESSIE") and sales team

8   2 was managed by defendant YAJING LI, aka "Alsa Lee" ("LI").

9   Defendant HUBEI AOKS and its sales representatives, including

10  defendants JESSIE and LI, openly advertised the sale of these

11  substances on various online platforms and provided their contact

12  information such as WhatsApp numbers, Wickr handles, and e-mail

13  addresses.  Through its own website, advertisements and engagements

14  on social media platforms, defendant HUBEI AOKS targeted customers in

15  the United States, Europe, Mexico, and elsewhere.  Some of the

16  advertisements are depicted below.









23.  Defendant HUBEI AOKS sales representatives, including defendants JESSIE and LI, were knowledgeable about the chemicals that defendant HUBEI AOKS sold, and they readily distinguished to customers that they sold precursors, such as 1-Boc-4P (fentanyl precursor), BMK (methamphetamine precursor), PMK (MDMA precursor), but not the final product.  The sales representatives suggested alternative chemicals if a particular chemical was out of stock or was otherwise not available, and they tailored their precursor recommendations depending on the customer's geographical market.  The sales representatives, including defendants JESSIE and LI, also offered to customers adulterants along with precursor purchases, including xylazine, lidocaine, benzocaine, and procaine.  The sales representatives, including defendants JESSIE and LI, guaranteed that the shipments would arrive safely in the United States and provided customers with examples of defendant HUBEI AOKS's recent shipments to various states within the United States, including Georgia, Pennsylvania, and Washington.

E.    DEFENDANT HUBEI AOKS SOLD PRECURSORS GLOBALLY

24.    Defendant HUBEI AOKS sold precursors to customers in the United States, Mexico, Europe, and elsewhere.  Defendant HUBEI AOKS claimed to export to more than 300 "pharmaceutical and chemical enterprises" across 100 different countries, with 80% of its business involving chemical exportation to Europe and America, and 20% to Asia, the Middle East, South Africa and other regions.

25.    Defendant HUBEI AOKS claimed that BMK (methamphetamine precursor) and PMK (MDMA precursor) were popular in the United States and Europe.

26.    Defendant HUBEI AOKS claimed that fentanyl precursors, including 1-Boc-4P, were most popular in Mexico.  Defendant HUBEI AOKS claimed that the profit from selling fentanyl precursors was worth the risk, so long as it was a large quantity, such as more than 100 kilograms at a time.

27.    Mexican drug trafficking organizations, including the Sinaloa and New Generation Jalisco cartels, are prolific producers of fentanyl, which is then imported into the United States, fueling the opioid crisis.  Fentanyl precursors sold by China-based chemical companies enable such cartels and other drug trafficking organizations to produce fentanyl on a massive scale for importation into and distribution within the United States.

28.    These Introductory Allegations are incorporated into each count of the Indictment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than November 24, 2016, and continuing to on or about November 2, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd." ("HUBEI AOKS"), XUENING GAO, GUANGZHOU GAO ("G. GAO"), YAJING LI, aka "Alsa Lee" ("LI"), and First Name Unknown Last Name Unknown, aka "Jessie Lee" ("JESSIE"), and others known and unknown to the Grand Jury, conspired to knowingly and intentionally commit one or both of the following offenses:

1.   Manufacture and distribution of at least 400 grams of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi); and

2.   Distribution of 1-Cbz-4-Piperidone and N-Carbethoxy-4-Piperidone, both of which are List I chemicals, knowing and having reasonable cause to believe that such listed chemicals will be used to manufacture a controlled substance, namely fentanyl, in violation of Title 21, United States Code, Section 841(c)(2).

B.   MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

11

1.   Defendants HUBEI AOKS, LI, and JESSIE, and other sales representatives known and unknown to the Grand Jury, would advertise the sale of fentanyl precursors, including List I chemicals, and fentanyl adulterants, including xylazine, globally, including to customers in Los Angeles, California on various online platforms and websites.

2.   Defendant XUENING GAO would operate defendant HUBEI AOKS, which would sell fentanyl precursors, including List I chemicals, and fentanyl adulterants, including xylazine, globally, including to customers in Los Angeles, California.

3.   Defendants LI and JESSIE, and other sales representatives at defendant HUBEI AOKS known and unknown to the Grand Jury, would communicate with customers with the purpose of enticing customers to make chemical purchases, including fentanyl precursors, List I chemicals, and adulterants, from defendant HUBEI AOKS.

4.   Defendants LI and JESSIE, and other sales representatives at defendant HUBEI AOKS known and unknown to the Grand Jury, would work with the defendant HUBEI AOKS's chemical factory, including by checking chemical inventory, including fentanyl precursors and List I chemicals, for customer orders.

5.   Defendants LI and JESSIE, and other sales representatives at defendant HUBEI AOKS known and unknown to the Grand Jury, would assure customers that defendant HUBEI AOKS's chemicals could be successfully shipped to the United States, including by providing customers with information about prior shipments by defendant HUBEI AOKS to various states in the United States.

6.   Defendants LI and JESSIE, and other sales representatives at defendant HUBEI AOKS known and unknown to the Grand Jury, would

process customer orders for chemicals, including fentanyl precursors, List I chemicals, and fentanyl adulterants, which would include sending invoices to customers for chemical purchases, confirming payments received, facilitating the shipment of chemicals to customers, and providing customers with tracking numbers of the parcels containing the chemicals.

7.    Defendant HUBEI AOKS would send chemicals to freight forwarders for shipment to customers in the United States.

8.    Defendants XUENING GAO and G. GAO would receive payments, including in cryptocurrency, from chemical purchases made by customers through defendant HUBEI AOKS.

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants HUBEI AOKS, XUENING GAO, G. GAO, LI, and JESSIE, together with others known and unknown to the Grand Jury, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On July 25, 2022, defendant LI, who at all times relevant to this Indictment was the sales manager of team 2 at defendant HUBEI AOKS, told a person who defendant LI believed was a customer in the Los Angeles area, but who, in fact, was an undercover agent ("UC"), that the minimum quantity for purchase of 1-Boc-4P (a fentanyl precursor) was 25 kilograms, that the price was $5,250, that 1-Boc-4P could easily be shipped to Los Angeles, and that most of defendant HUBEI AOKS's customers who liked 1-Boc-4P were located in Mexico.

<u>Overt Act No. 2:</u>    On July 25, 2022, defendant LI offered an alternative fentanyl precursor available for purchase from defendant HUBEI AOKS, CAS 40064-34-4, which corresponds to 4-Piperidone Monohydrate Hydrochloride, and explained that it was the "same kind of product" as 1-Boc-4P.

<u>Overt Act No. 3:</u>    On July 25, 2022, defendant LI provided the UC with images depicting partial tracking numbers corresponding to two United States Postal Service parcels that defendant LI purported to contain purchases made from defendant HUBEI AOKS and were successfully delivered to customers in Acworth, Georgia on June 7, 2022, and in Seattle, Washington on June 23, 2022.

<u>Overt Act No. 4:</u>    On July 27, 2022, defendant LI provided the UC with the cryptocurrency wallet address where chemical purchase payments to defendant HUBEI AOKS could be sent, which was a wallet owned by defendant XUENING GAO.

<u>Overt Act No. 5:</u>    On July 27, 2022, defendant LI advised the UC that 1-Boc-4P was sold in powder form and was shipped in 25-kilogram increments typically in fiber drums, but that it could also be re-packaged in cardboard boxes, and provided the following photograph:

<u>Overt Act No. 6:</u>    On August 18, 2022, a sales representative for defendant HUBEI AOKS provided the UC with an image depicting a United Postal Service ("UPS") parcel that the sales representative purported to a contain purchase made from defendant HUBEI AOKS and was successfully delivered to a customer in Philadelphia, Pennsylvania on July 1, 2022.

<u>Overt Act No. 7:</u>    On November 2, 2022, defendant JESSIE, who at all times relevant to this Indictment was the sales manager for team 1 at defendant HUBEI AOKS, advised the UC that 1-Boc-4P was available for purchase with 25 kilograms as the minimum order quantity, and asked how many kilograms would be ordered from defendant HUBEI AOKS each month or each year.

<u>Overt Act No. 8:</u>    On or before February 1, 2023, defendant LI obtained permission from a manager at defendant HUBEI AOKS to sell five kilograms of 1-Boc-4P to the UC, to which the UC explained it would make two million pills and that the UC wanted to also purchase xylazine to mix with the pills.

<u>Overt Act No. 9:</u>    On February 1, 2023, during a conversation about mixing xylazine with other substances to manufacture pills, defendant LI sent the UC an image of the powder xylazine that defendant HUBEI AOKS sold, as depicted below, and asked when the UC would be making a purchase and what method of payment would be used.



1    Overt Act No. 10:    On February 9, 2023, defendant LI provided

2 the UC with images depicting three UPS parcels that defendant LI

3 purported to contain purchases made from defendant HUBEI AOKS and

4 were successfully delivered to customers in Buena Park, California,

5 within the Central District of California, on December 19, 2022, and

6 Philadelphia, Pennsylvania on January 25 and 26, 2023.

7    Overt Act No. 11:    On February 9, 2023, defendant LI sent the

8 UC an invoice from defendant HUBEI AOKS for the purchase of five

9 kilograms of 1-Boc-4P, one kilogram of xylazine Hcl, and one kilogram

10 of 3,4-MDP-2-P Ethyl Glycidate (commonly known as PMK), which

11 contained information for a cryptocurrency wallet where payment could

12 be made and which was owned by defendant XUENING GAO, as depicted

13 below:



25    Overt Act No. 12:    On February 14, 2023, defendant HUBEI AOKS

26 received $3,000 via wire transfer to the bank account listed on the

27 invoice provided to the UC on February 9, 2023.

28

<u>Overt Act No. 13:</u>   On February 14, 2023, defendant LI confirmed that the UC's wire transfer payment was received by defendant HUBEI AOKS for the purchase of five kilograms of 1-Boc-4P, one kilogram of xylazine Hcl, and one kilogram of 3,4-MDP-2-P Ethyl Glycidate.

<u>Overt Act No. 14:</u>   On February 16, 2023, defendant LI informed the UC that defendant HUBEI AOKS sent the chemicals to the freight forwarder and that it would arrive in the United States in approximately three days.

<u>Overt Act No. 15:</u>   From February 16-21, 2023, defendant LI sent the UC three tracking numbers corresponding to parcels containing the three chemicals, including a fentanyl precursor, that were purchased from defendant HUBEI AOKS on February 14, 2023.

<u>Overt Act No. 16:</u>   On March 7, 2023, defendant LI informed the UC that all three parcels were successfully delivered.  The parcels were subsequently determined to contain 5,016 grams of 1-Boc-4P, 1,040.8 grams of xylazine, and 1,005 grams of 3,4-MDP-2-P Ethyl Glycidate, as depicted below.  Shipping records indicated that the parcels contents were falsely listed as: "furniture parts," "vases," and "towel."

 



Overt Act No. 17:   On March 8, 2023, defendant LI asked the UC if the UC would be making another purchase of 1-Boc-4P.

Overt Act No. 18:   On March 29, 2023, after the UC advised defendant LI that the "final product" from the 1-Boc-4P mixed with xylazine was "selling quickly," defendant LI advised that if the UC needed more 1-Boc-4P and xylazine to let her know.

Overt Act No. 19:   On April 17, 2023, defendant LI asked the UC, "How about business? Is there any new purchase plan?" to which the UC responded that business was doing well.

Overt Act No. 20:   On April 18, 2023, defendant LI asked the UC if the UC had additional demand for the chemicals, to which the UC responded that 1-Boc-4P was good for the end product "F," a slang term for fentanyl.

Overt Act No. 21:   On May 3, 2023, defendant LI sent the UC a list of defendant HUBEI AOKS's "hot selling products," which included over 40 chemicals including precursors, xylazine, and others.

Overt Act No. 22:   On May 7, 2023, defendant LI messaged, "Hi friend, do you still need xylazine hcl?"

Overt Act No. 23:   On June 6, 2023, defendant HUBEI AOKS willfully caused to be imported into Los Angeles, California a parcel containing xylazine, which was destined to a fentanyl trafficker in

Philadelphia, Pennsylvania, and which bore markings falsely representing that the contents were makeup, as set forth below.



Overt Act No. 24:    On June 24, 2023, defendant LI messaged, "Hi friend, do you have [an] order demand? If so, we can send you some presents free."

Overt Act No. 25:    On June 26, 2023, defendant JESSIE sent the UC an invoice from defendant HUBEI AOKS for the purchase of five kilograms of 1-Boc-4P, one kilogram of xylazine Hcl, and 100 grams of pronitazene (a synthetic opioid), which contained information for a cryptocurrency wallet where payment could be made and which was owned by defendant G. GAO, as depicted below.    Defendant JESSIE explained that the price of xylazine Hcl increased because the "raw materials" were more difficult to get.

Overt Act No. 26:    On June 27, 2023, defendant JESSIE provided the UC with an image depicting a UPS parcel that defendant JESSIE purported to contain a purchase made from defendant HUBEI AOKS and was successfully delivered to a customer in Philadelphia, Pennsylvania on June 13, 2023.

Overt Act No. 27:    On June 29, 2023, defendant JESSIE messaged the UC, "Can I know your plan for these[,] friend?" referring to the invoice defendant JESSIE sent on June 26, 2023.

Overt Act No. 28:    On July 6, 2023, defendant LI advised the UC that defendant HUBEI AOKS did not want to sell 1-Boc-4P to American customers because the United States "is very strict with it" and that xylazine Hcl was also "a little sensitive," and questioned, "Why do they mess with all this stuff?" "Let's do it without 79099 this time okay?" "We can't take risk to so it under this situation."

1    Overt Act No. 29:   On July 6, 2023, defendant LI sent the UC an

2    invoice for five kilograms of 1-Cbz-4P (a fentanyl precursor and List

3    I chemical), one kilogram of N-Carbethoxy-4P (a fentanyl precursor

4    and List I chemical), and one kilogram of xylazine Hcl, which

5    contained information for a cryptocurrency wallet ending in -PuM

6    where payment could be made and which was owned by defendant G. GAO,

7    as depicted below.   During the conversation, defendant LI also

8    offered for purchase: benzocaine, procaine, lidocaine, and

9    pregabalin, claiming that American customers also purchase these

10   chemicals and that they "sell well."



24   Overt Act No. 30:   On or after July 7, 2023, defendant HUBEI

25   AOKS received Bitcoin valued at roughly $3,596.41 in the -PuM wallet,

26   which was owned by defendant G. GAO, and about five hours after

27   receiving the Bitcoin, the Bitcoin was exchanged into 3,571.24 Tether

28   ("USDT"), another type of cryptocurrency.

1      Overt Act No. 31:  On July 9, 2023, defendant LI advised that

2  defendant HUBEI AOKS's "factory" needed to know the use for the

3  products that were purchased and for the UC to provide defendant LI

4  with a "good answer."  Defendant LI elaborated that it was a new

5  question that they were asking and she explained that if the answer

6  provided was not a good one then she would rather not know at all.

7      Overt Act No. 32:  On July 10, 2023, defendant LI told the UC

8  that defendant HUBEI AOKS's new policy required that sales

9  representatives inform customers of the following: "Our products are

10  for scientific research only, and are not used as drugs, family spare

11  medicines or other purposes."

12      Overt Act No. 33:  On July 11, 2023, defendant LI told the UC

13  that the UC's order might be delayed because shipping to the United

14  States "is not as good as before."

15      Overt Act No. 34:  On July 12, 2023, defendant G. GAO

16  exchanged, or willfully caused to be exchanged, 3,571.24 USDT, plus

17  an additional 16,739.06 USDT, in the -PuM wallet into 146,031.05

18  Chinese Yuan Renminbi.

19      Overt Act No. 35:  On July 14, 2023, defendant LI told the UC,

20  "Hi friend, goods are ready" "We are waiting to send them to freight

21  forwarder."

22      Overt Act No. 36:  On July 26, 2023, defendant LI told the UC

23  that "days prior" defendant HUBEI AOKS sent the chemicals that the UC

24  purchased on July 7, 2023, to the freight forwarder and that she was

25  checking on the shipping status every day.

26      Overt Act No. 37:  On June 27, 2023, defendant LI provided the

27  UC with the tracking number for the parcel containing the chemicals

28  that the UC purchased on July 7, 2023.

Overt Act No. 38:    On August 9, 2023, defendant LI told the UC that the parcel containing the chemicals that the UC purchased on July 7, 2023, was in customs clearance.

Overt Act No. 39:    On August 15, 2023, defendant LI messaged the UC that the parcel containing the chemicals that the UC purchased on July 7, 2023, would be "delivered soon" and to keep the "line open."

Overt Act No. 40:    On August 16, 2023, defendant LI confirmed that the parcel containing the chemicals that the UC purchased on July 7, 2023 was delivered.  The parcel was subsequently determined to contain 1,014.1 grams of Ethyl 4-oxo-1-piperidinecarboxylate (a fentanyl precursor and List I chemical); 5,012 grams of Benzyl 4-oxopiperidine-1-carboxylate (a fentanyl precursor and List I chemical), and 815.2 grams of xylazine, as depicted below.  Shipping records indicated that the parcel's contents were falsely described as "apparel."



1    <u>Overt Act No. 41</u>:    On August 16, 2023, defendant LI advised the

2    UC to order larger quantities from defendant HUBEI AOKS in the next

3    order stating, "our boss told me not to accept small quantity orders

4    after trial order. The profit is not worth [the] risk."   Defendant LI

5    explained that orders would need to be more than one drum (25

6    kilograms) because smaller quantity orders would necessitate more

7    deliveries, which in turn, caused a greater risk that the chemicals

8    would not clear customs.

9    <u>Overt Act No. 42</u>:    On August 21, 2023, defendant LI assured the

10   UC that 1-Boc-4-Piperidone was "not impossible to find, but there's

11   no need to risk it.   If the quantity is big and the profits are good,

12   there are still people willing to do it."

13   <u>Overt Act No. 43</u>:    On September 27, 2023, in furtherance of

14   another chemical purchase of 100 kilograms of N-Benzyloxycarbonyl-4-

15   piperidone (a fentanyl precursor and List I chemical) and 25

16   kilograms of xylazine Hcl, defendant LI conducted a video call with

17   the UC and represented that defendant HUBEI AOKS was a "real

18   company," and showed the UC defendant XUENING GAO's office and the

19   sales floor, as depicted below:

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

 

Overt Act No. 44:   On October 23, 2023, after the public announcement of several indictments in United States District Courts in Florida of chemical companies in China, defendant LI told the UC, "your USA government i[s] not kind to our Chinese suppliers" "So now we are very sensitive to American customers, your American government always likes to make some trumped-up charges to sanction us." Defendant LI advised to "wait for awhile" before placing another order.

COUNT TWO

[21 U.S.C. § 963]

[ALL DEFENDANTS]

A.    OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than November 24, 2016, and continuing to on or about November 2, 2023, in the country of China, and elsewhere, defendants HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd." ("HUBEI AOKS"), XUENING GAO, GUANGZHOU GAO ("G. GAO"), YAJING LI, aka "Alsa Lee" ("LI"), and First Name Unknown Last Name Unknown, aka "Jessie Lee" ("JESSIE"), each of whom will be arrested and first brought to the Central District of California, and others known and unknown to the Grand Jury, conspired to distribute 1-Cbz-4-Piperidone and N-carbethoxy-4-Piperidone, both of which are List I chemicals, intending, knowing, and having reasonable cause to believe such chemicals will be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960(d)(7).

B.    MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, through the manner and means set forth in Section B, Paragraphs 1 through 8, of Count One of this Indictment, which are re-alleged and incorporated here.

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy, and to accomplish its objects, defendants HUBEI AOKS, XUENING GAO, G. GAO, LI, and JESSIE, together with others known and unknown to the Grand Jury, committed and caused to be committed

various overt acts within the Central District of California, and elsewhere, including, but not limited to, Overt Acts 1-44, as set forth in Count One, Section C of this Indictment, which are re-alleged and incorporated here.

COUNT THREE

[21 U.S.C. §§ 959(a), 960(d)(7); 18 U.S.C. §§ 2(a), (b)]

[DEFENDANTS HUBEI AOKS, G. GAO, AND LI]

On or about July 26, 2023, in the country of China, and elsewhere, defendants HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd.," GUANGZHOU GAO, and YAJING LI, aka "Alsa Lee," each of whom will be arrested and first brought to the Central District of California, aiding and abetting each other, knowingly and intentionally distributed, and willfully caused to be distributed, Ethyl 4-oxo-1-piperidinecarboxylate, a List I chemical, knowing, intending, and having reasonable cause to believe that such chemical would be unlawfully imported into the United States.

COUNT FOUR

[21 U.S.C. §§ 959(a), 960(d)(7); 18 U.S.C. §§ 2(a), (b)]

[DEFENDANTS HUBEI AOKS, G. GAO, AND LI]

On or about July 26, 2023, in the country of China, and elsewhere, defendants HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd.," GUANGZHOU GAO, and YAJING LI, aka "Alsa Lee," each of whom will be arrested and first brought to the Central District of California, aiding and abetting each other, knowingly and intentionally distributed, and willfully caused to be distributed, Benzyl 4-oxopiperidine-1-carboxylate, a List I chemical, knowing, intending, and having reasonable cause to believe that such chemical would be unlawfully imported into the United States.

COUNT FIVE

[21 U.S.C. § 841(c)(2); 18 U.S.C. §§ 2(a), (b)]

[DEFENDANTS HUBEI AOKS, G. GAO, AND LI]

On or about August 16, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd.," GUANGZHOU GAO, and YAJING LI, aka "Alsa Lee," aiding and abetting each other, knowingly and intentionally distributed, and willfully caused to be distributed, Ethyl 4-oxo-1-piperidinecarboxylate, a List I chemical, knowing, intending, and having reasonable cause to believe that the listed chemical will be used to manufacture a controlled substance.

1

                              COUNT SIX

2

              [21 U.S.C. § 841(c)(2); 18 U.S.C. §§ 2(a), (b)]

3

                   [DEFENDANTS HUBEI AOKS, G. GAO, AND LI]

4

        On or about August 16, 2023, in Los Angeles County, within the

5

Central District of California, and elsewhere, defendants HUBEI AOKS

6

BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading

7

Company," aka "Aoks Trade Co., Ltd.," GUANGZHOU GAO, and YAJING LI,

8

aka "Alsa Lee," aiding and abetting each other, knowingly and

9

intentionally distributed, and willfully caused to be distributed,

10

Benzyl 4-oxopiperidine-1-carboxylate, a List I chemical, knowing,

11

intending, and having reasonable cause to believe that the listed

12

chemical will be used to manufacture a controlled substance.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SEVEN

[21 U.S.C. §§ 331(a), 333(a)(2), 352; 18 U.S.C. §§ 2(a), (b)]

[DEFENDANT HUBEI AOKS]

On or about February 16, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd.," knowingly and with intent to defraud and mislead, introduced and delivered for introduction, aided and abetted the introduction and delivery for introduction of, and willfully caused the introduction and delivery for introduction of, a misbranded drug, namely, 1-Boc-4-Piperidone, into interstate commerce.

COUNT EIGHT

[21 U.S.C. §§ 331(a), 333(a)(2), 352; 18 U.S.C. §§ 2(a), (b)]

[DEFENDANT HUBEI AOKS]

On or about February 16, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd.," knowingly and with intent to defraud and mislead, introduced and delivered for introduction, aided and abetted the introduction and delivery for introduction of, and willfully caused the introduction and delivery for introduction of, a misbranded drug, namely, 3,4-MDP-2-P Ethyl Glycidate, into interstate commerce.

COUNT NINE

[21 U.S.C. §§ 331(a), 333(a)(2), 352; 18 U.S.C. §§ 2(a), (b)]

[DEFENDANT HUBEI AOKS]

On or about February 16, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd.," knowingly and with intent to defraud and mislead, introduced and delivered for introduction, aided and abetted the introduction and delivery for introduction of, and willfully caused the introduction and delivery for introduction of, a misbranded drug, namely, xylazine, into interstate commerce.

COUNT TEN

[21 U.S.C. §§ 331(a), 333(a)(2), 352; 18 U.S.C. §§ 2(a), (b)]

[DEFENDANT HUBEI AOKS]

On or about June 6, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd.," knowingly and with intent to defraud and mislead, introduced and delivered for introduction, aided and abetted the introduction and delivery for introduction of, and willfully caused the introduction and delivery for introduction of, a misbranded drug, namely, xylazine, into interstate commerce.

COUNT ELEVEN

[21 U.S.C. §§ 331(a), 333(a)(2), 352; 18 U.S.C. §§ 2(a), (b)]

[DEFENDANT HUBEI AOKS]

On or about July 26, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd.," knowingly and with intent to defraud and mislead, introduced and delivered for introduction, aided and abetted the introduction and delivery for introduction of, and willfully caused the introduction and delivery for introduction of, a misbranded drug, namely, Ethyl 4-oxo-1-piperidinecarboxylate, into interstate commerce.

COUNT TWELVE

[21 U.S.C. §§ 331(a), 333(a)(2), 352; 18 U.S.C. §§ 2(a), (b)]

[DEFENDANT HUBEI AOKS]

On or about July 26, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd.," knowingly and with intent to defraud and mislead, introduced and delivered for introduction, aided and abetted the introduction and delivery for introduction of, and willfully caused the introduction and delivery for introduction of, a misbranded drug, namely, Benzyl 4-oxopiperidine-1-carboxylate, into interstate commerce.

COUNT THIRTEEN

[21 U.S.C. §§ 331(a), 333(a)(2), 352; 18 U.S.C. §§ 2(a), (b)]

[DEFENDANT HUBEI AOKS]

On or about July 26, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant HUBEI AOKS BIO-TECH CO. LTD., also known as ("aka") "Hubei Aoks Trading Company," aka "Aoks Trade Co., Ltd.," knowingly and with intent to defraud and mislead, introduced and delivered for introduction, aided and abetted the introduction and delivery for introduction of, and willfully caused the introduction and delivery for introduction of, a misbranded drug, namely, xylazine, into interstate commerce.

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 881(a)(6), 28 U.S.C. § 2461(c)

and 21 U.S.C. § 853]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 21, United States Code, Section 881(a)(6), Title 28, United States Code, Section 2461(c) and Title 21, United States Code Section 853, in the event of any Defendant's conviction under any of Counts One and Two of this Indictment.

2.    Defendants shall forfeit to the United States the following property:

        a.   all right, title and interest in any and all property, real or personal:

            i.   constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any offense set forth in any of Counts One through Three of this Indictment; or

            ii.  used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any offense set forth in any of Counts One through Three of this Indictment; and

        b.   a sum of money equal to the total value of the property described in subparagraph a above.

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), Defendants shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of any Defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon

the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 881(a)(6), 28 U.S.C. § 2461(c)

and 21 U.S.C. § 853]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendants HUBEI AOKS, G. GAO and LI that the United States will seek forfeiture as part of any sentence in accordance with Title 21, United States Code, Section 881(a)(6), Title 28, United States Code, Section 2461(c) and Title 21, United States Code Section 853, in the event of any of defendants HUBEI AOKS, G. GAO and LI's conviction under any of Counts Four through Six of this Indictment.

2.    Defendants HUBEI AOKS, G. GAO and LI shall forfeit to the United States the following property:

a.    all right, title and interest in any and all property, real or personal:

i.    constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any offense set forth in any of Counts Four through Seven of this Indictment; or

ii.    used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any offense set forth in any of Counts Four through Seven of this Indictment; and

b.    a sum of money equal to the total value of the property described in subparagraph a above.

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), Defendants HUBEI AOKS, G. GAO and LI shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of any of

defendants HUBEI AOKS, G. GAO and LI, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c)

and 18 U.S.C. § 982(a)(7)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant HUBEI AOKS ("Defendant") that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(C), Title 28, United State Code, Section 2461(c) and Title 18, United States Code, Section 982(a)(7), in the event of Defendant's conviction under any of Counts Seven through Thirteen of this Indictment.

2.    Defendant shall forfeit to the United States the following property:

a.  all right, title and interest in any and all property, real or personal, constituting, or derived from, any gross proceeds obtained, directly or indirectly, as a result of any offense set forth in any of Counts Eight through Fourteen of this Indictment; and

b.  a sum of money equal to the total value of the property described in subparagraph a above.

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b), Defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of Defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the

court; (d) has been substantially diminished in value; or (e) has
been commingled with other property that cannot be divided without
difficulty.

                                        A TRUE BILL


                                         /s/
                                        _____
                                        Foreperson


E. MARTIN ESTRADA
United States Attorney


MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

J. MARK CHILDS
Assistant United States Attorney
Chief, International Narcotics,
Money Laundering, and
Racketeering Section

BRITTNEY M. HARRIS
Assistant United States Attorney
Deputy Chief, International
Narcotics, Money Laundering, and
Racketeering Section

JENNA WILLIAMS
Assistant United States Attorney
Corporate Securities Fraud Strike
Force